# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

THOMAS J. BARTON,                          :

                     Petitioner,

        -vs-

PHILLIP KERNS, WARDEN,

                   Respondent.          :

Case No. 1:09-cv-353

District Judge S. Arthur Spiegel
Magistrate Judge Michael R. Merz

---

## REPORT AND RECOMMENDATIONS

This is a habeas corpus action brought by Petitioner Thomas J. Barton pursuant to 28 U.S.C. § 2254 and seeking relief from his convictions for one count of complicity to involuntary manslaughter and two counts of complicity to aggravated burglary. He was sentenced on these convictions to five to twenty-five years imprisonment for manslaughter and ten to twenty-five years imprisonment for aggravated burglary with the terms of imprisonment to be served consecutively.

**Statement of Facts**

The Warren County Court of Appeals described the facts and circumstances leading to Mr. Barton's convictions as follows:

> Appellant was a lieutenant with the Springboro Police Department. In April 1995, appellant and his wife of 15 years, Vickie Barton, were living on their horse farm in Franklin Township, in Warren County, Ohio. The couple's farm was located about five miles outside of the city limits of Springboro.
>
> On April 11, 1995, a police dispatcher with the Warren County Communication Center received a 911 call from appellant. Appellant

told the dispatcher, "there's a murd-my wife has just been killed, I think." Appellant identified himself, gave his address, and told the dispatcher that he had just returned home and found his wife lying on their bed, with a pillow over her face. He asked for an emergency squad. The dispatcher told appellant to check to see if his wife was still breathing. After doing so, appellant reported to the dispatcher that his wife was "not breathing" and was "cold," and that she had been "gone for awhile."

The police detectives who responded to the scene found that Vickie had three gunshot wounds to her head. There was also evidence that she sustained pre-mortem injuries and had been sexually assaulted. A bite mark was found on her left breast, from which DNA evidence was obtained.

Appellant was initially cleared as a suspect in the case after it was learned that he had been elsewhere at the probable time of Vickie's death. The case remained unsolved for a number of years.

In November 1998, a career criminal named Gary Henson was arrested by Middletown Police Detective Frank Hensley on suspicion that he had been involved in an unrelated burglary. According to Detective Hensley's account of his interview with Henson, Henson told the detective the following facts about the killing of Vickie Barton:

Henson said that his half-brother, William Phelps, had become romantically involved with Vickie. Phelps told Henson that he came to Vickie's house on the day she was killed, and when he thought she had left, he and another man who was with him began to steal things from her residence. However, when Phelps saw that Vickie had not left, he panicked and shot her. Phelps committed suicide four months after the incident. Henson told Detective Hensley that he believed Phelps had committed suicide as a result of his having killed Vickie.

Detective Hensley relayed this information to Detective J.R. Abshear of the Warren County Sheriff's Office, who was in charge of the investigation of Vickie's killing. As a result of this information, Phelps' body was exhumed in order to obtain a sample of his DNA. However, subsequent testing revealed that Phelps' DNA did not match the DNA collected from Vickie on the day she was killed. Consequently, the case remained unsolved.

In April 2003, a "cold case" squad, headed by Captain John Newsom,

was assembled by the Warren County Sheriff's Office to solve the Vickie Barton case. Captain Newsom and his team examined all of the evidence that had been collected in the case, including a tape recording of appellant's 911 call on the day of Vickie's killing, and a transcript of that call.

When Captain Newsom listened to the 911 tape, he heard appellant say, "I gotta call Phelp man." Captain Newsom noticed that the transcript of the 911 call had the word "Phelp" incorrectly transcribed as "Phillip." When Captain Newsom and his fellow officers discovered the name "Phelp" on the 911 tape, they remembered that the file in the Vickie Barton case included an exhumation of a "William Phelps," which had occurred in 1998. When the officers looked into Phelps' file, they found the name of Gary Henson.

Detectives from the cold case team interviewed Henson in August 2003, and asked him to reveal what he knew about the 1995 burglary of appellant's and Vickie's residence, in which Vickie was killed. At that time, Henson provided information to the detectives that implicated appellant in Vickie's killing.

On April 9, 2004, appellant was indicted by a Warren County Grand Jury on two counts of involuntary manslaughter, two counts of aggravated burglary, and one count of burglary. The state (hereinafter "appellee") alleged that appellant acted with complicity to commit each of the principal offenses listed in the indictment.FN1

> FN1. R.C. 2923.03(F) states that "[a] charge of complicity may be stated in terms of this section [i.e., the complicity statute], or in terms of the principal offense."

Appellee's theory of the case was that appellant had hired Phelps to stage a burglary at the Bartons' residence. The purpose of the staged burglary was to scare Vickie into moving away from the couple's horse farm, which Vickie was known to have been passionate about, and into the city limits of Springboro where, presumably, Vickie would feel safer, following the "burglary." The reason appellant wanted to move into the city limits of Springboro was that appellant wanted to become that city's police chief. Springboro has an unwritten rule that requires its police chief to reside in the city. Thus, appellee theorized that appellant wanted Vickie and himself to move into Springboro in order to improve his chances of becoming that city's police chief.

At appellant's trial, appellee presented a copy of the 911 tape, and the testimony of several of the police officers dispatched to the scene on the day Vickie was killed. The officers testified that the burglary of appellant's and Vickie's residence appeared to have been staged.

Appellee's key witness was Henson, who testified that appellant had paid Phelps $3,000 to go to his and Vickie's residence to scare Vickie. Henson testified that appellant did not tell Phelps why he wanted Vickie scared, but gave him two guns with which to scare her.

Henson said that, initially, Phelps had enlisted his aid in carrying out his plan to scare Vickie, which they planned to do by "lay[ing] the house out," i.e., entering the residence and laying out some of the personal possessions they found inside, to make it appear as if an intruder had been preparing to steal them. However, Henson could not help Phelps carry out his plan to scare Vickie because he was in jail at the time the staged burglary was supposed to be carried out. As a result, Phelps obtained the assistance of an unidentified accomplice.

Henson testified that Phelps told him that when he and his accomplice went to Vickie's residence to try to scare her, she surprised them. Phelps said that his accomplice "panicked" and then shot and killed Vickie. Phelps also said that at one point during the encounter, his accomplice, whom Phelps referred to as a "sick fuck," bit Vickie on the "tit" and sexually assaulted her.

On cross-examination, Henson denied telling Detectives Hensley and Abshear that Phelps had told him that he [meaning, Phelps] shot and killed Vickie. Rather, Henson insisted that when he had made such a statement to Detective Hensley, the "he" that he was referring to was Phelps's unidentified accomplice, not Phelps himself.

In the presentation of their case, the defense called Detective Hensley who related the November 1998 conversation he had with Henson. Detective Hensley stated that Henson was referring to Phelps, and not his unidentified accomplice, when Henson told the detective that Phelps said that he (Phelps) shot and killed Vickie. Appellant also presented two experts who testified that on the disputed portion of the 911 tape, appellant said, "I gotta call for help, man." Appellee rebutted this testimony with its own expert who asserted that appellant said, "I gotta call Phelp, man."

On February 18, 2005, the jury convicted appellant of one count of

complicity to involuntary manslaughter and two counts of complicity to aggravated burglary. On February 22, 2005, appellant moved for a new trial based on newly discovered evidence. Following an evidentiary hearing, the trial court overruled appellant's motion for a new trial.

At appellant's sentencing hearing, the trial court merged appellant's convictions on the two counts of complicity to aggravated burglary, finding that the charges were allied offenses of similar import. The court then sentenced appellant to 5 to 25 years imprisonment for the charge of complicity to aggravated manslaughter, and 10 to 25 years imprisonment for the charge of complicity to aggravated burglary. The trial court ordered appellant to serve those terms consecutively.

*State v. Barton,* No. CA2005-03-036, 2007 WL 731409 at *1-*3 (Ohio App. 12th Dist. Mar. 12, 2007); Appendix ("App.") Ex. 34 at 1-6, PageID 442-47[1].

## State Court Proceedings

On April 9, 2004, a Warren County Grand Jury indicted Mr. Barton on two counts of involuntary manslaughter in violation of O.R.C. §§ 2903.04(A), 2903.04(B), two counts of aggravated burglary in violation of O.R.C. §§ 2911.11(A)(1), 2911.11(A)(2), and one count of burglary in violation of O.R.C. § 2911.12(A)(1). App. Ex. 1, PageID 52-57. Mr. Barton pled not guilty and during the pretrial process filed several motions. See, *e.g.,* App. Ex. 2, PageID 58-77. App. Ex. 4, PageID 82-89; App. Ex. 5, PageID 90-98; App. Ex. 6, PageID 99-104; App. Ex. 7, PageID 114-17. The trial court held an evidentiary hearing with respect to Mr. Barton's various motions and subsequently denied them. See, *e.g.,* App. Ex. 13, PageID 185; App. Ex. 14, PageID 186-87; App. Ex. 15, PageID 188-90.

A jury trial commenced on February 7, 2005. App. Ex. 25, PageID 268; Trial

---

[1] The Appendix is attached to Respondent's Answer/Return of Writ. (Doc. 11, Attachments 1 and 2 thereto).

Transcript ("Tr.") at 1, PageID 801.[2] On February 18, 2005, the jury found Mr. Barton guilty as charged in Count I (involuntary manslaughter), Count II (aggravated burglary), and Count III (aggravated burglary) of the Indictment. Tr. at 1388-89, PageID 2188-89.

Mr. Barton filed a Motion for New Trial on February 22, 2005, App. Ex. 16, PageID 191-203, and the court held a hearing on the motion on March 7, 2005. *See* App. Ex. 20, PageID 235. On March 14, 2005, Mr. Barton filed a Supplemental Motion for New Trial, App. Ex. 21, PageID 243, and on March 17, 2005, the court denied Mr. Barton's Motion and Supplemental Motion. App. Ex. 24, PageID 260-67.

After merging Counts II and III of the Indictment, on March 18, 2005, the court sentenced Mr. Barton to not less than five nor more than twenty-five years on Count I of the Indictment (involuntary manslaughter) and to not less than ten nor more than twenty-five years on Count II of the Indictment (aggravated burglary), both sentences to be served consecutively. App. Ex. 25, PageID 268-69.

Mr. Barton filed a Notice of Appeal to the Warren County Court of Appeals on March 18, 2005. App. Ex. 26, PageID 270-71. On February 16, 2006, Mr. Barton filed his merit brief in which he raised the following assignments of error:

### FIRST ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO GRANT HIM A NEW TRIAL**

### ISSUE PRESENTED FOR REVIEW AND ARGUMENT

WHEN A DEFENDANT PRODUCES NEW EVIDENCE

---

[2] The Transcript is attached to Petitioner's Motion to Expand the Record which this Court granted. (Doc. 18 and Notation Order thereon).

WHICH, IF BELIEVED BY THE JURY, WOULD UNDOUBTEDLY REQUIRE AN ACQUITTAL, THE TRIAL COURT MUST GRANT HIM A NEW TRIAL.

## SECOND ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO EXCLUDE HEARSAY EVIDENCE.**

### FIRST ISSUE PRESENTED FOR REVIEW AND ARGUMENT

EVEN THOUGH HEARSAY TESTIMONY MAY BE A STATEMENT AGAINST THE DECLARANT'S PENAL INTEREST, THE CONFRONTATION CLAUSES OF BOTH THE 6TH AMENDMENT TO THE U.S. CONSTITUTION AND SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION REQUIRE SUCH TESTIMONY TO OTHERWISE BE RELIABLE BEFORE IT CAN BE ADMISSIBLE.

### SECOND ISSUE PRESENTED FOR REVIEW AND ARGUMENT

THE STATEMENT OF A CO-DEFENDANT IS INADMISSIBLE AGAINST A DEFENDANT, EVEN WHEN THE DEFENDANTS HAVE SEPARATE TRIALS.

## THIRD ASSIGNMENT OF ERROR

**APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL.**

### ISSUE PRESENTED FOR REVIEW AND ARGUMENT

COUNSEL IS INEFFECTIVE WHEN HE FAILS TO CHALLENGE A KEY WITNESS WHOSE MEMORY MAY HAVE BEEN REFRESHED THROUGH HYPNOSIS WHEN HE OPENS THE DOOR TO EVIDENCE THAT THE DEFENDANT MAY HAVE ATTEMPTED TO IMPEDE THE INVESTIGATION, AND WHEN HE FAILS TO OBJECT TO CRUCIAL AND DEVASTATING HEARSAY TESTIMONY AND TO AN UNRELIABLE

TAPE RECORDING.

## FOURTH ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO EXCLUDE A COPY OF THE 911 TAPE**.

### FIRST ISSUE PRESENTED FOR REVIEW AND ARGUMENT

IT IS ERRONEOUS FOR A COURT TO ADMIT THE DUPLICATE OF AN AUDIOTAPE WHEN CRUCIAL QUESTIONS REGARDING ITS AUTHENTICITY EXIST AND WHEN, UNDER THE CIRCUMSTANCES, IT WOULD BE UNFAIR TO THE DEFENSE TO ALLOW SUCH A RECORDING.

### SECOND ISSUE PRESENTED FOR REVIEW AND ARGUMENT

THE DESTRUCTION BY THE STATE OF THE AUDIO RECORDING OF A 911 CALL DEPRIVES A DEFENDANT OF DUE PROCESS OF LAW WHEN THE VERY WORDING ON THE TAPE IS CRUCIAL TO THE DEFENSE AND WHERE THAT WORDING CANNOT BE OBTAINED BY OTHER DUPLICATE MEANS.

## FIFTH ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT PERMITTED EVIDENCE REGARDING DEFENDANT-APPELLANT'S ALLEGED DECEPTION WHEN TAKING A POLYGRAPH TEST.**

### ISSUE PRESENTED FOR REVIEW AND ARGUMENT

BECAUSE A POLYGRAPH TEST IS INHERENTLY UNRELIABLE AND THE RESULTS ARE INADMISSIBLE, IT IS IMPROPER TO ALLOW EVIDENCE THAT A DEFENDANT HAD ATTEMPTED TO INTERFERE WITH THE TEST.

## SIXTH ASSIGNMENT OF ERROR

**THERE WAS INSUFFICIENT EVIDENCE TO JUSTIFY A CONVICTION OF INVOLUNTARY MANSLAUGHTER AND AGGRAVATED BURGLARY.**

### ISSUE PRESENTED FOR REVIEW AND ARGUMENT

WHEN THERE IS NO CREDIBLE EVIDENCE, DIRECT OR CIRCUMSTANTIAL, TO CONNECT THE DEFENDANT TO A CRIME, IT IS VIOLATIVE OF HIS DUE PROCESS RIGHTS TO CONVICT HIM.

## SEVENTH ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN THE WAY IT INSTRUCTED THE JURY.**

### FIRST ISSUE PRESENTED FOR REVIEW AND ARGUMENT

A COURT IS REQUIRED TO PROVIDE ALL RELEVANT JURY INSTRUCTIONS AT THE OUTSET OF DELIBERATIONS, AND THE FAILURE TO DO SO MUST REQUIRE A MISTRIAL.

### SECOND ISSUE PRESENTED FOR REVIEW AND ARGUMENT

WHEN PROVIDING JURY INSTRUCTIONS, IT IS IMPROPER FOR THE COURT TO AD LIB EXAMPLES THAT DEVIATE FROM THE STANDARD INSTRUCTIONS AND TO OTHERWISE EMPHASIZE A FINDING OF GUILT.

### THIRD ISSUE PRESENTED FOR REVIEW AND ARGUMENT

IT IS IMPROPER TO GIVE THE JURY A *HOWARD* CHARGE WHEN IT HAS THE EFFECT OF FORCING A JURY TO REACH A VERDICT.

## EIGHTH ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT IMPOSED CONSECUTIVE SENTENCES ON HIM.**

### ISSUE PRESENTED FOR REVIEW AND ARGUMENT

A COURT ABUSES ITS DISCRETION IN IMPOSING CONSECUTIVE SENTENCES FOR INVOLUNTARY MANSLAUGHTER AND AGGRAVATED BURGLARY WHEN SUBSTANTIAL MITIGATION EXISTS REGARDING THE DEFENDANT'S BACKGROUND, RECORD, AND CAREER.

## NINTH ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DID NOT CONDUCT ALL SIDEBAR PROCEEDINGS ON OBJECTIONS ON THE RECORD.**

### ISSUE PRESENTED FOR REVIEW AND ARGUMENT

IN ORDER FOR THERE TO BE PROPER APPELLATE REVIEW, ALL HEARINGS ON OBJECTIONS JUST BE ON THE RECORD.

## TENTH ASSIGNMENT OF ERROR

**THE CUMULATIVE EFFECT OF THE NUMEROUS ERRORS DEPRIVED DEFENDANT-APPELLANT OF A FAIR TRIAL.**

App. Ex. 27, PageID 272-361.

On March 12, 2007, the Warren County Court of Appeals affirmed Mr. Barton's conviction and sentence. *Barton,* 2007 WL 731409; App. Ex. 34, PageID 442-79.

On April 25, 2005, Mr. Barton filed his timely notice of appeal to the Supreme Court of Ohio. App. Ex. 35, PageID 481-82. In his Memorandum in Support of Jurisdiction, Mr. Barton raised the following propositions of law:

Proposition of Law No. I

The Sixth Amendment, Section 10, Article I of the Ohio Constitution, and the common law require the State to prove that there are particularized guarantees of reliability and trustworthiness before a trial court can admit into evidence a non-testimonial declaration against penal interest.

Proposition of Law No. II

Evid.R. 804(B)(3) does not allow the admission of non-self-inculpatory statements that are within a broader narrative that is generally self-inculpatory.

Proposition of Law No. III

Even when pre-hypnosis is used by the State, it is still incumbent on the State to record the interview with the hypnotized witness and to call the issue to the attention of the trial court, and it is ineffective assistance of counsel to fail to request a pre-trial hearing on this issue.

Proposition of Law No. IV

Pre-indictment destruction of exculpatory evidence by the state violates the defendant's due process rights and Evid.R. 1003.

App. Ex. 36, PageID 483-539.

The Ohio Supreme Court denied Mr. Barton leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *State v. Barton,* 114 Ohio St.3d 1482 (2007)(table); App. Ex. 38, PageID559.

During this period of time, specifically on April 20, 2005, Mr. Barton filed his petition for post-conviction relief pursuant to O.R.C. § 2953.21 in which he raised the following grounds for relief:

**A.  Barton's due process and confrontation clause rights under the Fifth and Sixth Amendments were violated because the State failed to give notice to the trial court prior to trial of its intention**

11

to offer hypnotically refreshed testimony.

**B.  Barton's Sixth Amendment right to effective assistance of counsel was violated where his trial counsel, having been placed on notice that the primary witness against Barton had been interviewed using investigative hypnosis, failed to request any type of hearing concerning the admissibility of the testimony of this witness and failed to raise the issue of hypnosis upon cross-examination of the witness.**

**C.  Barton's Sixth Amendment right to effective assistance of counsel was violated where his trial counsel failed to object to the hearsay testimony of the State's key witness after his motion in limine to preclude that testimony was denied.**

**D.  Barton was denied due process, as guaranteed y the Fifth and Fourteenth Amendments by the State's failure to provide his counsel with exculpatory evidence in violation of *Brady v. Maryland*.**

**E.  Barton's Sixth Amendment right to effective assistance of counsel was violated where his trial counsel opened the door to the admission of evidence on the issue of polygraph deception.**

App. Ex. 39, PageID 560-91.

On October 5, 2006, the court denied Mr. Barton's petition for post-conviction relief. App. Ex. 42, PageID 612-15.  Mr. Barton filed a motion for reconsideration, App. Ex.  43, PageID 616-39, which the court denied. App. Ex. 44, PageID 640-41.

Mr. Barton filed an appeal to the Warren County Court of Appeals on November 2, 2006 App. Ex. 45, PageID 642-43.  On April 2, 2007, Mr. Barton filed his merit brief in which he raised the following assignments of error:

### FIRST ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT OVERRULED HIS PETITION FOR POST-CONVICTION RELIEF WITHOUT A HEARING.**

FIRST ISSUE PRESENTED FOR REVIEW AND
ARGUMENT

A HEARING IS REQUIRED ON A POST CONVICTION
RELIEF PETITION WHEN TRIAL COUNSEL PROVIDES
AN AFFIDAVIT THAT HE DID NOT NOTICE A
DISCOVERY DOCUMENT CONTAINING
EXCULPATORY INFORMATION THAT A KEY
STATE'S WITNESS HAD BEEN HYPNOTIZED,
THEREBY RENDERING COUNSEL INEFFECTIVE FOR
FAILING TO CALL THIS ISSUE TO THE ATTENTION
OF THE COURT AND TO CROSS-EXAMINE THE
WITNESS ABOUT THE HYPNOSIS.

SECOND ISSUE PRESENTED FOR REVIEW AND
ARGUMENT

IT IS A VIOLATION OF *BRADY V. MARYLAND*, 373 U.S.
83 (1963), FOR THE STATE TO BE IN POSSESSION OF
EXCULPATORY OR IMPEACHMENT MATERIAL AND
REFUSE TO TURN IT OVER TO THE DEFENDANT
UNDER THE GUISE THAT THE MATERIAL WOULD
NOT BE BELIEVED BY A JURY.

App. Ex. 46, PageID 644-700.

On June 9, 2008, the court of appeals affirmed the trial court. *State v. Barton,* No.

CA2006-10-127, 2008 WL 2331366 (Ohio App. 12th Dist. June 9, 2008); App. Ex. 49, PageID 736-

44.

On July 21, 2008, Mr. Barton filed his timely notice of appeal to the Supreme Court

of Ohio. App. Ex. 50, PageID 745-46. In his Memorandum in Support of Jurisdiction, Mr. Barton

raised the following propositions of law:

Proposition of Law No. I

A post-conviction court adjudicating a *Brady* claim must determine
its merits unless the record-on-appeal shows that the evidence was
fully disclosed to the defendant at trial and the defendant failed to
raise the issue on direct appeal.

13

Proposition of Law No. II

The State cannot conceal impeachment evidence from the defendant because its agents disbelieve a witness.

Proposition of Law No. III

A defendant may reasonably rely upon the State's representations about specific *Brady* evidence and is not required to search beyond these representations for possible evidence.

Proposition of Law No. IV

When the evidence is ambiguous whether trial counsel's failure to file a vital motion is trial strategy or no strategy at all, it is incumbent upon the trial court to conduct an evidentiary hearing in order to determine whether the defendant received the effective assistance of counsel.

App. Ex. 51, PageID 747-72.

The Ohio Supreme Court denied Mr. Barton leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *State v. Barton*, 120 Ohio St.3d 1417 (2008)(table); App. Ex. 53, PageID 790.

**Proceedings in this Court**

Mr. Barton filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he raised the following grounds for relief:

<strong>Ground One</strong>

The Due Process Clause of the Fourteenth Amendment was violated where the state withheld *Brady* impeachment evidence from Barton that undermined the credibility of the sole witness that inculpated him.

<strong>Ground Two</strong>

Barton was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments:

14

1) because his trial attorney failed to challenge the reliability or cross-examine the State's primary witness regarding testimony that was refreshed or influenced by pretrial hypnosis; and

2) because his trial attorney failed to renew an objection at trial to the testimony of the State's primary witness regarding his dead brother's hearsay account of Barton's involvement in the crime.

### **Ground Three**

Barton was denied his right to confrontation under the Sixth and Fourteenth Amendments where the trial court admitted hearsay from the primary witness's dead brother that was the only evidence of Barton's guilt.

### **Ground Four**

The Ohio court's erroneous admission of the dead brother's hearsay statements was sufficiently egregious to violate the Due Process requirement for a fundamentally fair trial.
[Withdrawn, *infra*]

(Doc. 1, PageID 1).

Mr. Barton filed a Motion for an Evidentiary Hearing on his ineffective assistance of counsel claim, (Doc. 27), which the Court granted in part and denied in part. (Doc. 29). Subsequently, the United States Supreme Court decided *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011) and based on the authority of *Pinholster,* this Court vacated its Order granting Mr. Barton's motion for an evidentiary hearing. (Doc. 42). Mr. Barton then filed an Unopposed Motion for the Court to Proceed with Its Report and Recommendation[s] ..., which this Court granted. (Doc. 43 and Notation Order thereon).

At this juncture, the Court notes that Mr. Barton has withdrawn his due process claim which he presented in Ground Four. (Doc. 19, PageID 2195).

**Standard of Review**

## I. Antiterrorism and Effective Death Penalty Act of 1996

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA") applies to all habeas cases filed after April 24, 1996. *Herbert v. Billy,* 160 F.3d 1131 (6th Cir. 1998), *citing, Lindh v. Murphy,* 521 U.S. 320 (1997). Since Mr. Barton filed his Petition well after the AEDPA's effective date, the amendments to 28 U.S.C. § 2254 embodied in the AEDPA are applicable to his Petition.

Title 28 U.S.C. § 2254, as amended by the AEDPA, provides:

...
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

The AEDPA also provides that a factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). In addition, pursuant to the AEDPA, before a writ may issue on a claim that was evaluated by the state courts, the federal court must conclude that the state court's adjudication of a question of law or mixed question of law and fact was "contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." 28 U.S.C. §

2254(d)(1).

A state court's decision is contrary to the Supreme Court's clearly-established precedent if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law; or (2) the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule [from Supreme Court cases] but unreasonably applies it to the facts of the particular state prisoner's case", "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply[,] or [if the state court] unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407-08. For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous; it must have been "objectively unreasonable." *Wiggins v. Smith,* 539 U.S. 510, 520-21 (2003); *Williams,* 529 U.S. at 407, 409. An *unreasonable* application of federal law is different from an *incorrect* application of federal law. *Id.* at 410 (emphasis in original). In sum, Section 2254(d)(1) places a new constraint on the power of a federal court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. *Id.* at 412 (Justice O'Connor, concurring).

A state court decision is not "contrary to" Supreme Court law simply because it does not specifically cite Supreme Court cases. *Early v. Packer,* 537 U.S. 3 (2002). Indeed, "contrary to" analysis does not even require awareness of Supreme Court cases, so long as neither the

reasoning nor the result of the state-court decision contradicts them. *Id.* at 8. The AEDPA prohibits the overturning of state decisions simply because the federal court believes that the state courts incorrectly denied the petitioner relief:

> By mistakenly making the "contrary to" determination and then proceeding to a simple "error" inquiry, the Ninth Circuit evaded Section 2254(d)'s requirement that decisions which are not "contrary to" clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but "an unreasonable application" of clearly established federal law, or based on "an unreasonable determination of the facts".

*Id.* at 11.

The AEDPA standard of review applies only to "any claim that was adjudicated on the merits in State court proceedings." *Danner v. Motley,* 448 F.3d 372, 376 (6th Cir. 2006). A state court's failure to articulate reasons to support its decision is not grounds for reversal under the AEDPA. *Williams v. Anderson,* 460 F.3d 789, 796 (6th Cir. 2006), *citing, Harris v. Stovall,* 212 F.3d 940 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001). Where the state court fails to adjudicate a claim on the merits, the habeas court conducts an independent review of a petitioner's claims. *Williams*, *supra.* That independent review, however, is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Williams, supra.*

For each claim adjudicated on the merits in the state courts, the decision the federal courts review is that of "the last state court to issue a reasoned opinion on the issue." *Joseph v. Coyle*, 469 F.3d 441, 450 (6th Cir. 2006), citing *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005), *cert. denied,* 548 U.S. 908 (2006); see also*, e.g., Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("[A] federal court reviewing a habeas petition should examine the decision of the last state

court to rule on the merits of the issue."); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002) ("This court . . . must look to the last reasoned decision of the state court as the basis of the state court's judgment."); *Barrientes v. Johnson*, 221 F.3d 741, 779 (5th Cir. 2000) ("When the last state adjudication of the claim is silent or ambiguous, the federal court should look through to the last clear state decision on the matter." (internal quotation marks omitted)), *cert. dismissed*, 531 U.S. 1134 (2001).

## II. Procedural Default

The standard for evaluating a procedural default defense is as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); see also, *Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a state's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F. 3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478 (1986); *Engle*, 456 U.S. at 107; *Wainwright,* 433 U.S. at 87.

The Sixth Circuit Court of Appeals requires a four-part analysis when determining whether a habeas claim is barred by procedural default. *Reynolds v. Berry*, 146 F. 3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F. 2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261

F.3d 594 (6th Cir. 2001), *cert. denied,* 534 U.S. 1147 (2002).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>  . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F. 2d at 138.

**Merits of the Petition**

**Ground One**

> The Due Process Clause of the Fourteenth Amendment was violated where the state withheld *Brady* impeachment evidence from Barton that undermined the credibility of the sole witness that inculpated him.

Mr. Barton argues in support of Ground One that the state withheld from him material exculpatory evidence related to state's witness Gary Henson. Specifically, Mr. Barton alleges that the state failed to disclose information concerning Mr. Henson's involvement in a suspected burglary of a residence in 1993. Mr. Barton's position is that the information is impeachment evidence and that by withholding it, the state violated his constitutional rights under *Brady v. Maryland,* 373 U.S. 83 (1963).

Respondent argues that Mr. Barton's *Brady* claim is procedurally defaulted and, in the alternative, that the claim is without merit.

Mr. Barton first raised this claim in the post-conviction proceedings. The appeals court addressed it as follows:

> Appellant's second argument in this appeal is that the state failed to disclose exculpatory information concerning Henson's suspected burglary of a Lebanon residence in 1993. See *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). At appellant's trial, Henson testified that he had previously committed staged burglaries for hire. The state maintained that the burglary of appellant's residence appeared to have been staged as well. During pretrial discovery, the state provided defense counsel with a police report documenting a burglary committed at the Lebanon residence of James and Ann Kelly in 1993. The Kelly burglary was suspected to have been staged due to the fact that items of personal property were placed on the floor and the house was not ransacked.

> In the present matter, appellant argues that the state was under a duty to inform him that the Kelly case was re-investigated by the Cold Case Squad in 2004 following the burglary of appellant's residence. Nothing in the police report provided to appellant connected Henson to the Kelly burglary. Therefore, appellant contends that he was unable to use that information to perhaps impeach Henson or the officers who investigated the burglary of his residence. If such information had been disclosed, appellant argues, there is a reasonable probability that the outcome of his case would have been different.

> We note that appellant did not raise any *Brady* issues on direct appeal. "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or an appeal from that judgment." *State v. Perry* (1967), 10 Ohio St.2d 175, 226

N.E.2d 104, paragraph nine of the syllabus. Consequently, appellant is barred from raising any *Brady* issues in this postconviction relief proceeding.

*Barton,* 2008 WL 2331366 at *3-4.

As noted above, the Respondent argues first that this claim is procedurally defaulted. However, because the Court concludes that Mr. Barton's *Brady* claim is without merit, the Court will assume *arguendo* that the claim is not defaulted.

"*Brady* [*v. Maryland,* 373 U.S. 83 (1963)] requires the prosecution to disclose all material exculpatory evidence to the defendant before trial." *Henness v. Bagley*, 644 F.3d 308, 324, (6th Cir., 2011). To succeed on a *Brady* claim, a habeas petitioner must show that (1) evidence favorable to the petitioner (2) was suppressed by the government and (3) the petitioner suffered prejudice. *Henness, supra,* citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004) and *Stickler v. Greene,* 527 U.S. 263, 281-82 (1999). Favorable evidence is "material under *Brady* if a reasonable probability exists that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *Henness, supra,* citing *Cone v. Bell,* 556 U.S. 449, 129 S.Ct. 1769 (2009).

The Court has rejected any distinction between impeachment evidence and exculpatory evidence in the *Brady* context. *Connick v. Thompson,* ___ U.S. ___, ___, 131 S.Ct. 1350, 1381 n. 16 (2011), quoting *United States v. Bagley,* 473 U.S. 667, 676 (1985). In other words, impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule. *Id.*

*Brady* "is concerned only with cases in which the government possesses information which the defendant does not, and the government's failure to disclose the information deprives the defendant a fair trial." *United States v. Mullins,* 22 F.3d 1365, 1371 (6th Cir. 1994). There is no

22

*Brady* violation where the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information or where the evidence is available to the defendant from another source. *United States v. Clark,* 928 F.3d 733, 738 (6ᵗʰ Cir. 1991).

Mr. Barton argues that the state withheld from him certain material which involved Mr. Henson's suspected involvement in the 1993 burglary of a Lebanon, Ohio residence. Mr. Barton's theory is that if he had the material, he would have been able to impeach Mr. Henson. Specifically, Mr. Barton claims that the state should have disclosed to him the fact that the cold case squad reinvestigated the 1993 burglary of the Lebanon, Ohio, residence belonging to the Kelly family. Mr. Barton's position is that when the cold case squad reinvestigated that 1993 event, Ann Kelly and her daughter Becky Kelly advised the cold case squad investigators that nobody in the Kelly family had hired Mr. Henson to stage a burglary at their home. Mr. Barton alleges that this information was impeachment material because Mr. Henson testified at trial that he had been involved in staging that burglary and the cold case squad's investigation established otherwise.

As an initial matter, the Court notes that in his brief in support of his post-conviction petition, Mr. Barton conceded that during pre-trial discovery the state had provided him a copy of a Warren County Sheriff's office report regarding a 1993 burglary at 2394 Columbia Road, Lebanon, Ohio,the residence owned by James and Ann Kelly. App. Ex. 39 at 81, PageID 561. That burglary was suspected to have been staged because items of personal property were placed on the floor and the house was not ransacked. However, in the affidavits they provided in support of Mr. Barton's post-conviction petition, Mrs. Kelly and Becky Kelly testified that when the cold case squad re-investigated the Kelly residence burglary, they denied that the 1993 burglary had been staged. *Id.* at 98-99, PageID 578-79; *Id.* at 100-101, PageID 580-81. As noted, Mr. Barton's

position is that the state should have disclosed to him the fact that it had reinvestigated the burglary of the Kelly residence.

Mr. Henson testified at Mr. Barton's trial that he and his brother William Phelps had engaged in criminal activity together including being hired by people to steal their vehicles so they (the "employers") could collect the insurance. Tr. at 569, PageID 1369. In addition, Mr. Barton and Mr. Phelps were hired to stage burglaries of residences. *Id.* Mr. Henson also testified that he and Mr. Phelps had been involved in an incident where they were in the process of staging a burglary when a lady came home and they "fired [guns] over her head", she ran and got in her car and they "got away with it." *Id.* at 579, PageID 1379. Those facts are similar to the event facts that Becky Miller described in her affidavit which Mr. Barton submitted in support of his post-conviction petition. App. Ex. 39 at 98-99, PageID 578-79; *Id.* at 100-101, PageID 580-81.

It is clear that Mr. Barton had in his possession the original sheriff's office report of the investigation of the 1993 burglary of the Kelly residence. He was aware that the matter had been investigated, that the law enforcement personnel suspected that the burglary had been staged, and that the crime had never been solved. The report which Mr. Barton had in his possession contained the Kellys' names and the address of their residence. Mr. Barton, then, had the opportunity prior to trial to interview Mr. Kelly (who was deceased by the time Mr. Barton filed his post-conviction petition, see, Ex. 39 at 98, PageID 578), Mrs. Kelly, and Becky Kelly. When the cold case squad reinvestigated the Kelly residence burglary, the resulting information was the same as what Mr. Barton could have had before trial. In other words, had Mr. Barton interviewed the Kellys prior to trial, they would have told him that none of them had hired anyone which, of course, would have included Mr. Henson and Mr. Phelps, to stage a burglary at their residence, the same that they told

the cold case squad members. Based on the evidence which the state provided to Mr. Barton he could have discovered the same information prior to trial (that the Kellys denied hiring Mr. Henson and Mr. Phelps) that he would have discovered based on the reinvestigation of the Kelly residence burglary by the cold case squad. Therefore, there was no *Brady* violation.

The state court's findings and conclusions as to the claim Mr. Barton raised in Ground One are not contrary to or an unreasonable application of clearly established federal law. Mr. Barton's Ground One should be rejected.

## Ground Two

Barton was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments:

1) because his trial attorney failed to challenge the reliability or cross-examine the State's primary witness regarding testimony that was refreshed or influenced by pretrial hypnosis; and

2) because his trial attorney failed to renew an objection at trial to the testimony of the State's primary witness regarding his dead brother's hearsay account of Barton's involvement in the crime.

In his first subclaim of Ground Two, Mr. Barton argues that his Sixth Amendment right to counsel was violated because his trial counsel failed to properly pursue the issue of Mr. Henson having been subjected to "investigatory hypnosis". Mr. Barton's position is that his counsel should have moved for a pre-trial hearing on the reliability and admissibility of Mr. Henson's testimony in light of the hypnosis.

Mr. Barton raised this claim during post-conviction and the court rejected it as follows:

After reviewing the record, we find that the trial court did not abuse

its discretion in overruling appellant's postconviction relief petition without a hearing because appellant did not demonstrate substantive grounds for relief. There is nothing in the record to support the assertion that the defense was unaware of Henson's hypnosis. Appellant concedes that the state provided defense counsel with the discovery document informing them of the hypnosis. John [sic] P. Rion, the defense attorney responsible for cross-examining Henson, did not submit an affidavit alleging that he was unaware of Henson's hypnosis. The absence of an affidavit from John [sic] P. Rion does not establish that the defense was unaware of Henson's hypnosis.

Furthermore, the statement in John H. Rion's affidavit that he "[had] no recollection of receiving information that Gary Henson's testimony may have been influenced by hypnosis" was ambiguous in two respects. First, John H. Rion's statement did not signify that the defense never received word that Henson had been subjected to investigative hypnosis. Rather, he contended that he "had no recollection" of receiving the information. This is clearly different from making the affirmative assertion that he never received the information. Second, John H. Rion's statement that he did not recall being informed that Henson's testimony "*may* have been *influenced* by hypnosis" (emphasis added) was vague. In utilizing such wording, John H. Rion was not asserting that he believed Henson's testimony was in fact altered by hypnosis. Instead, his statement offered tenuous conjecture about the effect of Henson's hypnosis in lieu of making an affirmative statement that Henson's testimony was altered by the hypnosis.

Although appellant's attorneys failed to address the hypnosis issue at trial, appellant was not prejudiced as a result. See *id*. See, also, *Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (providing that, in order to prove ineffective assistance of counsel, a defendant must show that counsel's actions fell below an objective standard of reasonableness and that the defendant was prejudiced as a result). In fact, John H. Rion's affidavit actually accords with the state's position that the hypnosis did not significantly alter Henson's testimony.

The state maintains that Henson's testimony was not notably altered by the hypnosis, therefore no hearing on its admissibility was required. See *State v. Johnston* (1988), 39 Ohio St.3d 48, 50-51, 529 N.E.2d 898; *State v. Doan*, Clinton App. No. CA2001-09-030, 2002-Ohio-3351, ¶ 31. Major John Newsom of the Warren County Sheriff's Office, an investigator working on the cold case murder of

appellant's wife, testified in his affidavit that "Henson's testimony at trial concerned only matters recalled prior to hypnosis. Henson's testimony was substantially in conformance with his pre-hypnosis memory." Newsom's testimony, viewed in conjunction with other evidence in the record substantiating appellant's guilt,FN2 supports the conclusion that defense counsel's failure to address the hypnosis issue did not prejudice appellant. Therefore, appellant has failed to show that there was a denial or infringement of his constitutional right to counsel so as to warrant an evidentiary hearing on his petition for postconviction relief.

> FN2. As this court observed in affirming appellant's conviction on direct appeal: " * * * Henson's trial testimony was corroborated by other evidence that strongly pointed to appellant's guilt, including the 911 tape, in which appellant can be heard saying 'I gotta call Phelp, man,' and the testimony of several police officers who testified that the burglary that took place at appellant's and Vickie's residence on the day Vickie was killed appeared to have been staged." *State v. Barton*, Warren App. No. CA2005-03-036, 2007-Ohio-1099, ¶ 35.

*Barton,* 2008 WL 2331366 at *2-3.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, (1970) (citations omitted). "The Supreme Court set forth the test for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, ... (1984)". *Eley v. Bagley,* 604 F.3d 958, 968 (6th Cir.), *cert. denied,* ___ U.S. ___, 131 S.Ct. 822 (2010).

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that the counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence

resulted from a breakdown in the adversary process that renders the
result unreliable.

*Strickland,* 466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must

show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. ___, ___, 130

S.Ct. 2250, 2255 (2010), citing *Knowles v. Mirzayance,* 556 U.S. 111(2009).

      With respect to the first prong of the *Strickland* test, the Supreme Court has

commanded:

> Judicial scrutiny of counsel's performance must be highly
> deferential.... A fair assessment of attorney performance requires that
> every effort be made to eliminate the distorting effects of hindsight,
> to reconstruct the circumstances of counsel's challenged conduct, and
> to evaluate the conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the evaluation, a court
> must indulge a strong presumption that counsel's conduct falls within
> a wide range of reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be considered sound trial
> strategy."

*Strickland,* 466 U.S. at 689, quoting *Michel v. State of Louisiana,* 350 U.S. 91, 101 (1955).

      As to the second prong, the Supreme Court said:

> The defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the proceeding
> would have been different.  A reasonable probability is a probability
> sufficient to overcome confidence in the outcome.

*Strickland,* 466 U.S. at 694; see also, *Darden v. Wainwright,* 477 U.S. 168 (1986); *Wong v. Money,*

142 F.3d 313, 319  (6th Cir. 1998).

      This Court will assume that Mr. Barton's trial counsel were ineffective for failing

to properly pursue the issue of Mr. Henson having been subjected to "investigatory hypnosis" and

will turn to the "prejudice" prong of an ineffective assistance of counsel claim.

There is no dispute that Mr. Henson underwent a hypnotic session as part of the investigation in Mr. Barton's case and Mr. Barton acknowledged that the state disclosed that fact to him. App. Ex. 39 at 81, PageID 561; App. Ex. 40 at 113, PageID 593.

In opposition to Mr. Barton's post-conviction petition, the state submitted the affidavit of John Newsom, a major with the Warren County Sheriff's office. Major Newsom testified in his August 7, 2006, affidavit that he had been assigned to head the cold case investigation of Vicki Barton's murder and that he was familiar with Mr. Henson's hypnotic interview and his trial testimony and that: (1) the hypnotic interview was undertaken after Mr. Henson gave a number of interviews with the cold case investigators; (2) the purpose of the hypnotic interview was to determine if Mr. Henson could recall any additional statements by Mr. Phelps; (3) as a result of the hypnotic interview, Mr. Henson could not recall any additional statements which Mr. Phelps made to him; and (4) Mr. Henson's trial testimony concerned only matters that he recalled prior to hypnosis and was substantially in conformance with his pre-hypnosis memory. App. Ex. 41, PageID 609-11.

Major Newsom's affidavit is unchallenged. In other words, there is nothing in the record which contradicts Major Newsom's testimony that Mr. Henson's memory, and subsequently his testimony, was not altered or supplemented, or in any other way affected by the hypnosis. Therefore, if Mr. Barton's counsel had pursued the issue of Mr. Henson having been subjected to "investigatory hypnosis", they would have discovered that the hypnotic session had absolutely no effect on Mr. Henson's memory or trial testimony. Accordingly, Mr. Barton was not prejudiced by his counsel's failure to pursue the hypnosis issue.

In his second subclaim of Ground Two, Mr. Barton argues that his trial counsel were

constitutionally ineffective for failure to object to the hearsay testimony which Mr. Henson gave at trial. Respondent argues that this claim is procedurally defaulted.

Mr. Barton raised this claim on direct appeal in the court of appeals, App. Ex. 27, PageID 316-17, and the court of appeals rejected the claim. *Barton,* 2007 WL 731409 at *23. Mr. Barton failed to bring the claim on appeal to the Ohio Supreme Court. App. Ex. 36, PageID 484. Although Mr. Barton raised this ineffective assistance of counsel claim in his post-conviction petition, App. Ex. 39, PageID 568-69, the trial court failed to address the claim. App. Ex. 42, PageID 612-15. Mr. Barton did not raise the claim on direct appeal in the court of appeals, App. Ex. 46, PageID 645-46, nor did he raise it on appeal to the Ohio Supreme Court. App. Ex. 51, PageID 748.

First, this Court notes that Mr. Barton was represented at trial by attorneys John H. Rion and Jon Paul Rion, see, *i.e.,* Tr. at 2, PageID 802, and on appeal by attorneys Fred Miller and and Christopher Pagan. See, *i.e.,* App. Ex. 35, PageID 481. Because Mr. Barton was represented by new counsel on direct appeal and because his ineffective assistance of trial counsel claim could be determined without examining evidence outside the record, he was required to bring that claim on direct appeal as opposed to post-conviction proceedings. See *Fautenberry v. Mitchell,* 515 F.3d 614, 633 (6th Cir. 2008). The fact that Mr. Barton brought the claim in post-conviction proceedings is irrelevant.

A petitioner may procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); see also, *Leroy v. Marshall,* 757 F.2d 94, 100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985)(citation omitted).

As noted above, Mr. Barton brought this issue on direct appeal in the state court of appeals but failed to raise it in his memorandum in support of jurisdiction in the Ohio Supreme Court. Pursuant to *O'Sullivan* and *Leroy*, Mr. Barton's claim in the second subsection of Ground Two is procedurally defaulted.[3]

Assuming arguendo that Mr. Barton's "hearsay" ineffective assistance of counsel claim is not defaulted, the Court concludes that the second subsection of Ground Two is without merit.

As noted above, in order to succeed on a claim of ineffective assistance of counsel, Mr. Barton must first establish that his counsel were constitutionally deficient and then establish that he was prejudiced by that deficient performance. *Strickland,* 466 U.S. at 694; *Berghuis,* ___ U.S. at ___, 130 S.Ct. at 2255. Even if there is a basis in the record for determining that Mr. Barton's trial counsels' performance was constitutionally deficient for failure to preserve the record by making a contemporaneous objection to Mr. Henson's hearsay testimony, Mr. Barton was not prejudiced by his counsels' deficient performance. Specifically, in addressing Ground Three of Mr. Barton's Petition, this Court has determined that Mr. Barton's Confrontation Clause claim is meritless. For the same reasons that the Court had rejected Mr. Barton's Ground Three, the Court concludes that Mr. Barton was not prejudiced by his trial counsel's failure to preserve the record. In other words, it was not error for the trial court to admit Mr. Henson's hearsay testimony. Therefore, Mr. Barton's trial counsel failure to preserve the record would likely have been futile.

The state court's findings and conclusions as to both subsections of Ground Two are not contrary to or an unreasonable application of clearly established federal law. Mr. Barton's

---

[3] Mr. Barton has not raised any claim of ineffective assistance of appellate counsel which would arguably serve as "cause" for the default.

Ground Two should be rejected.

## **Ground Three**

> Barton was denied his right to confrontation under the Sixth and Fourteenth Amendments where the trial court admitted hearsay from the primary witness's dead brother that was the only evidence of Barton's guilt.

In support of Ground Three, Mr. Barton argues that the trial court violated his Sixth Amendment right to confrontation when it admitted into evidence through Mr. Henson hearsay testimony from the deceased witness, Mr. Phelps, who was Mr. Henson's brother. Respondent argues that this claim is procedurally defaulted.

Mr. Barton raised this claim on direct appeal and the court of appeals rejected it as follows:

> Appellant argues that the trial court erred by refusing to exclude Henson's testimony concerning what Phelps had told him about his and appellant's involvement in the staged burglary that took place on April 11, 1995, in which Vickie Barton was killed. He asserts that Henson's testimony about what Phelps told him should have been excluded as hearsay because (1) Phelps' statements did not fall within the hearsay exception for statements made against penal interest since the statements were untrustworthy, and (2) permitting Henson to testify about what Phelps told him violated his right of confrontation under both the United States and Ohio Constitutions. We disagree with both of these arguments.

> As a threshold matter, we note that while appellant filed a pretrial motion in limine seeking to exclude Henson's testimony about what Phelps had told him, which the trial court overruled, it is axiomatic that an order granting or denying a motion in limine, in and of itself, does not preserve the record on appeal. See *State v. Grubb* (1986), 28 Ohio St.3d 199, 201-203.

> Here, appellant failed to raise an objection at trial to Henson's testimony regarding what Phelps had told him and, therefore, appellant has waived all but plain error with respect to this issue. See id. As a general rule, plain error is to be recognized only where "the outcome of the trial clearly would have been different absent the

error." *State v. Hill*, 92 Ohio St.3d 191, 203, 2001-Ohio-141. Additionally, "plain error should be found only in exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. In this case, the trial court's decision to allow Henson to testify about what Phelps told him did not amount to any error, plain or otherwise.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(c)). Generally, hearsay testimony is inadmissible unless the testimony falls within one of the recognized exceptions to the hearsay rule. See Evid.R. 802. One such exception is for statements "against penal interest" contained in Evid.R. 804(B)(3). Evid.R. 804 states in pertinent part:

"(B) **Hearsay exceptions**. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\*\*\*

"(3) Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

"The determination of whether corroborating circumstances are sufficient to admit statements against penal interest, as a hearsay exception, generally rests within the discretion of the trial court." *State v. Landrum* (1990), 53 Ohio St.3d 107, 114.

"The existence or nonexistence of corroborating circumstances also invokes Confrontation Clause concerns." *State v. Yarbrough*, 95 Ohio St.3d 227, 233-236, 2002-Ohio-2126. The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Similarly, Article I, Section 10 of the Ohio Constitution guarantees the accused the right to "meet the witnesses face-to-face."

In *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, the United States Supreme Court identified two values underlying the Confrontation Clause: (1) the Framers' preference for face-to-face accusation, and (2) the reliability of the hearsay statement. Id. at 65-66. In furtherance of these values, the court held that the party offering the hearsay evidence had to show that the declarant is "unavailable" and that the statement bears adequate "indicia of reliability." *Id.* at 66. The reliability requirement may be met by showing that the statement falls within a "firmly rooted hearsay exception," which renders it presumptively reliable, or that it possesses "particularized guarantees of trustworthiness." *Id.* at 66.

In *Crawford v. Washington*, (2004), 541 U.S. 36, 124 S.Ct. 1354, the court rejected the reliability requirement of Roberts with respect to "testimonial" statements,FN3 and held that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68. Consequently, the Crawford court held that where testimonial evidence is at issue, the Confrontation Clause requires unavailability and a prior opportunity for cross-examination in order for the evidence to be deemed admissible. *Id.*

> FN3. Although *Crawford* declined to provide a comprehensive definition of what constituted "testimonial statements," it did state that such statements included " 'ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' * * * 'extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' * * * [and] 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial [.]' * * * " [Citations omitted.] *Crawford*, 541 U.S. at 51-52. *Crawford* stated that it was leaving "for another day any effort to spell out a comprehensive definition of 'testimonial.' " *Id.* at 68. Nevertheless, the court stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations" since "[t]hese are the modern

practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.*

Conversely, *Crawford held* that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Id*.

Reviewing courts employ a de novo standard when reviewing a claim that a criminal defendant's rights have been violated under the Confrontation Clause. *State v. Jackson*, Cuyahoga App. No. 86105, 2006-Ohio-174, citing *United States v. Robinson* (C.A.6, 2004), 389 F.3d 582, 592.

Applying the foregoing to the facts of this case, we first note that since Phelps was deceased at the time of Henson's testimony, Phelps was "unavailable" for purposes of both Evid.R. 804(B)(3) and the Confrontation Clause of the Sixth Amendment of the United States Constitution. See Evid.R. 804(A)(4) and *Roberts*, 448 U.S. at 74.

Second, as appellant himself acknowledges, Phelps' statements do not fall into any of the categories of "testimonial" statements identified in *Crawford*, see fn. 3, and *Crawford*, 541 U.S. at 51-52, 68, and, thus, Phelps' statements to Henson are "nontestimonial." As we have indicated, under *Crawford*, the states have flexibility in their development of hearsay law regarding nontestimonial statements, and may follow the approach outlined in *Roberts*, or may exempt such statements from Confrontation Clause scrutiny altogether. See *Crawford*, 541 U.S. at 68. One appellate district in this state, citing this language from Crawford, has concluded that the reliability test of *Roberts* still applies with respect to nontestimonial hearsay. *State v. Crager*, 164 Ohio App.3d 816, 823, 2005-Ohio-6868, ¶ 26.

Assuming that *Roberts* still applies to nontestimonial statements, we then must determine whether Henson's testimony about what Phelps told him bears adequate "indicia of reliability," *i.e.*, either the statement falls within "a firmly rooted hearsay exception" or has "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66.

Initially, Phelps' statements to Henson do not fall within a firmly rooted exception to the hearsay rule. As the Ohio Supreme Court has said, "[t]he hearsay exception for statements against interest is not a

firmly rooted exception, at least when the statement is 'offered by the prosecution to establish the guilt of an alleged accomplice of the declarant.' " *State v. Yarbrough*, 95 Ohio St.3d 227, 234, 2002-Ohio-2126, quoting *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448.

Nevertheless, Phelps' statements to Henson possess "particularized guarantees of trustworthiness," which makes them reliable under *Roberts*, and there are "corroborating circumstances [that] clearly indicate the trustworthiness of the statement[s]," which makes them admissible under the hearsay exception for statements against penal interest contained in Evid.R. 804(B)(3).

The Ohio Supreme Court has ruled that statements against a declarant's penal interest, which are made privately to relatives or close friends, contain the necessary guarantees of trustworthiness to enable a trial court to admit them. See, *e.g., Yarbrough*, 95 Ohio St.3d at 235-236 ("where a declarant makes a statement to someone with whom he has a close personal relationship, such as a spouse, child, or friend, courts usually hold that the relationship is a corroborating circumstance supporting the statement's trustworthiness") (emphasis sic); and *State v. Issa*, 93 Ohio St.3d 49, 60-61, 2201-Ohio-1290 (accomplice's statements to his friends were sufficiently reliable since accomplice implicated himself in a serious crime and did not shift the blame by implicating defendant).

In this case, Phelps' statements were made to his half-brother, Henson, with whom he shared a close relationship. Phelps did not make the statements while talking to the police as a suspect, unlike the out-of-court declarants in *Lilly v. Virginia* (1999), 527 U.S. 116, 119, S.Ct. 1887, and *Madrigal*, 87 Ohio St.3d 378. Furthermore, Phelps had nothing to gain from inculpating appellant in the crime. See *Issa*, 93 Ohio St.3d at 61. By stating that appellant had hired him to stage a burglary of appellant's and Vickie's residence, during which Vickie was raped and killed, Phelps was admitting his role in an aggravated burglary that resulted in Vickie's death. *Id*.

While Phelps placed the blame for Vickie's killing on his unidentified accomplice, and spread some of the blame for the offenses to appellant, he did not shift the blame for Vickie's killing on appellant. In fact, Phelps' statement actually served to exonerate appellant from a charge that appellant intended for Vickie to be killed in the staged burglary. As a result, Phelps' statements made Phelps and his unidentified accomplice significantly more responsible than appellant

for Vickie's killing. Thus, the corroborating circumstances in which Phelps' statements were made clearly indicate the statements' trustworthiness under Evid.R. 804(B)(3), and Phelps' statements possess "particularized guarantees of trustworthiness," which renders the statements reliable under the Confrontation Clause. *Roberts*, 448 U.S. at 66.

Consequently, we conclude that the admission of Phelps' statements through Henson's testimony did not violate either the Confrontation Clause of the United States Constitution or Evid.R. 804(B)(3). See *Yarbrough*, 95 Ohio St.3d at 236; and *State v. Hand*, 107 Ohio St.3d 378, 393, 2006-Ohio-18 (where a person makes a statement to a close family member that implicates the person in a crime, this corroborating circumstance is sufficient to support statement's trustworthiness, rendering the statements admissible under Evid.R. 804[B][3] ). Cf., *Lilly v. Virginia* (1999), 527 U.S. 116, 137-139, 119 S.Ct. 1887 (statements against penal interest are not reliable when made to police officers in a custodial setting).

Appellant also argues that Phelps' statements to Henson should have been ruled inadmissible under the rule announced in *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620. We disagree with this argument.

Under the *Bruton* rule, in cases where a defendant and a co-defendant are tried together, and the co-defendant does not take the stand, the admission of the codefendant's confession inculpating the defendant denies the defendant his rights of confrontation and cross-examination under the Sixth Amendment of the United States Constitution. See id. at 126-127.

In *State v. Young* (1983), 5 Ohio St.3d 221, the Ohio Supreme Court stated that Bruton had held that "where there are co-defendants, one who has confessed and one who has not, the co-defendants are entitled to separate trials and the one defendant's confession is not admissible against the other." *Young* at 225. The *Young* court held that "a statement by a co-defendant who is granted a separate trial may not be read into evidence at the trial of the other co-defendant where it defeats the right of confrontation." *Id.*

Appellant argues that these principles must be applied to this case and, as a result, Phelps' statements must be ruled as inadmissible against him. We disagree with this argument.

At the time of trial, Phelps had been dead for more than nine years. Phelps and appellant have never been co-defendants in this matter; consequently, *Bruton* and *Young* have no application to this case. Instead, appellant's rights under the Confrontation Clause of the United States Constitution must be judged under the principles set forth in *Crawford*.

As we have indicated, *Crawford* provides that where the hearsay evidence at issue is "testimonial," the Confrontation Clause requires unavailability of the declarant and a prior opportunity for cross-examination in order for the evidence to be deemed admissible. *Crawford*, 541 U.S. at 68. In this case, appellant has conceded that Phelps' statements are "decidedly" nontestimonial under *Crawford*.

*Crawford* further provides that where nontestimonial hearsay is at issue, states may either adopt the approach outlined in *Roberts* or exempt such statements from Confrontation Clause scrutiny, altogether. *Crawford* at 68. Assuming that *Roberts* still applies to nontestimonial statements, see *Crager*, 164 Ohio App.3d at 823, we conclude that Phelps' statements are admissible under either the Confrontation Clause of the United States Constitution or Evid.R. 804(B)(3), for the reasons stated above.

In light of the foregoing, we conclude that the trial court did not violate appellant's rights under the Confrontation Clause of the United States Constitution by admitting Henson's testimony regarding what Phelps had told him about Phelps' and appellant's involvement in the staged burglary that resulted in Vickie's killing. We also conclude that the trial court did not abuse its discretion by allowing Henson's testimony about what Phelps had told him, pursuant to the hearsay exception for statements against penal interest under Evid.R. 804(B)(3).

Appellant's second assignment of error is overruled.

*Barton,* 2007 WL 731409 at *5-9.

As noted above, Respondent argues that this claim is procedurally defaulted. Respondent's position is that the state court of appeals determined that Mr. Barton had defaulted on the claim because he failed to comply with the contemporaneous objection rule. Additionally, while the court of appeals invoked Ohio's contemporaneous objection rule, the court also conducted a

"plain error" analysis and determined that the admission of the testimony about which Mr. Barton complains did not violate his Sixth Amendment confrontation right. Of course, this Court is not precluded from finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground. *Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000), citing *Harris v. Reed,* 489 U.S. 255 (1989). In addition, a state appellate's court's review for plain error is enforcement, not waiver, of a procedural default. *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001)(citation omitted).

The courts place high importance on the contemporaneous objection rule. *Scott,* 209 F.3d at 870, citing *United States v. Grady,* 456 U.S. 152 (1982). Indeed, states have a very strong interest in the contemporaneous objection rule. *Scott, supra,* quoting extensively from *Wainwright v. Sykes*, 433 U.S. 72, 88-90 (1977). Ohio's contemporaneous objection rule is an adequate and independent state ground. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001); *Scott*, 209 F.3d at 867, citing *Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).

It has long been the law in Ohio that a trial court's ruling on a motion in limine is not a final ruling on evidence, but is rather a "tentative, interlocutory, precautionary ruling." *State v. Grubb*, 28 Ohio St.3d 199, 201-02 (1986); *State v. Maurer*, 15 Ohio St.3d 239, 259 (1984). As such, a ruling on a motion in limine does not preserve the record on appeal. *Grubb*, 28 Ohio St.3d at 203. In other words, "a ruling on a motion in limine may not be appealed and [ ] objections to the introduction of testimony ... must be made during the trial to preserve evidentiary rulings for appellate review." *Gable v. Gates Mills*, 103 Ohio St.3d 449, 456 (2004).

It is undisputed that Mr. Barton's trial counsel filed a pre-trial motion in limine to exclude Mr. Henson's hearsay testimony and that the trial court denied the motion. See, App. Ex.

14, PageID 186-87. Additionally, a review of the transcript establishes that while Mr. Barton's trial counsel made various objections during Mr. Henson's testimony, they completely failed to object at any time during the trial to the introduction of the hearsay testimony the prosecutor elicited from Mr. Henson. Tr. at 564-610, PageID 1364-1410; Tr. at 659-63, PageID 1364-1410. In other words, Mr. Barton's counsel failed to properly comply with long-standing Ohio law and preserve the record for appeal.

  The three *Maupin* prongs have been satisfied with respect to Mr. Henson's testimony. First, there is a state procedural rule, to wit: the contemporaneous objection rule, with which Mr. Barton failed to comply; second, the state courts actually enforced the contemporaneous objection rule; and third, the Sixth Circuit has determined, the contemporaneous objection rule is an adequate and independent state ground. The questions becomes, then, whether Mr. Barton had "cause" for not following the contemporaneous objection rule and whether he was actually prejudiced by the alleged constitutional error.

  Of course, if Mr. Barton's trial counsel were ineffective for failing to comply with Ohio's contemporaneous objection rule, he could show cause to excuse his default of his substantive claim. *Goodwin v. Johnson,* 632 F.3d 301, 316 (6th Cir. 2011), citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). However, for ineffective assistance of counsel to serve as cause, Mr. Barton must first have properly presented the claim of ineffective assistance of counsel to the state courts, so that the claim also is not procedurally defaulted. See *Henness,* ___ F.3d at ___, WL 2621896 at *4, citing *Edwards,* 529 U.S. at 450–51. As this Court concluded above, Mr. Barton defaulted on his ineffective assistance of trial counsel claim. Therefore, it cannot provide him with "cause" for the default of the present claim. The claim, therefore, is procedurally defaulted.

Assuming *arguendo* that Mr. Barton's Confrontation Clause claim is not procedurally defaulted, this Court concludes that the claim is meritless.

"The Sixth Amendment's Confrontation Clause confers upon the accused '[i]n all criminal prosecutions, ... the right ... to be confronted with the witnesses against him.'" *Bullcoming v. New Mexico,* ___ U.S. ___, ___, 131 S.Ct. 2705, 2713 (2011). This right is incorporated against the states through the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 406 (1965).

The Sixth Circuit recently addressed the issue of the Confrontation Clause in *Miller v. Stovall,* 608 F.3d 913 (6th Cir. 2010), and the court noted:

> For over twenty years, courts analyzed confrontation challenges using *Ohio v. Roberts,* 448 U.S. 56 (1980), under which hearsay statements were admissible so long as they bore sufficient "indicia of reliability," that is, if they fell into a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." *Id.* at 66. In *Crawford v. Washington,* 541 U.S. 36 (1994), the Supreme Court revised its understanding of the confrontation right. ... The Court held that if a hearsay statement is testimonial, it can be admitted against a criminal defendant only if the declarant is unavailable for trial and the defendant had a prior opportunity to cross-examine the declarant. *Id* at 59. Although the Court left unanswered whether *Roberts* still governs nontestimonial hearsay, *id.* at 68, it later held that the Confrontation Clause did not apply at all to such statements, abrogating *Roberts* in full, *see Davis v. Washington,* 547 U.S. 813, 821 (2006).

608 F.3d at 918.

There is no dispute that Mr. Phelps was not available to testify at trial nor is it disputed that Mr. Barton never had the opportunity to cross-examine Mr. Phelps. Rather, the first question is whether the various statements Mr. Phelps made to Mr. Henson, who then testified about those statements at Mr. Barton's trial, were "testimonial" in nature thereby implicating the

Confrontation Clause.

In *Crawford*, the Supreme Court declined to "spell out a comprehensive definition of 'testimonial.' " 541 U.S. at 68. It began at the extremes, noting that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 51. It then listed three "formulations" of th[e] core class of testimonial statements," drawn from court filings and pervious cases:

> [(1)] "*ex parte* in-court testimony or its functional equivalent–that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," Brief for Petitioner 23; [(2)] "extrajudicial statements ... contained in formalized testimonial materials such as affidavits, depositions, prior testimony, or confessions," *White v. Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment); [(3)] "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," Brief for National Association of Criminal Defense Lawyers et al. at *Amici Curiae* 3.

*Id.* at 51-52. The Court noted that "all share a common nucleus." *Id.* at 52. It also declared that testimony at a preliminary hearing, grand jury proceeding, or former trial and statements in police interrogations are testimonial under any definition, *id.* at 52, 68, and that business records and statements in furtherance of a conspiracy are not testimonial "by their nature," *id.* at 56.

In *Davis v. Washington,* 547 U.S. 813 (2006), the Court delivered a refined definition of "testimonial," but only for a subset of cases involving police interrogation. ... The Court explicitly cautioned that it did not mean "to imply, however, that statements made in the absence of any interrogation are necessarily nontestimonial," because the Framers did not intend "to exempt from cross-examination volunteered testimony or answers to open-ended questions." *Id.* at 822 n.1. In its most recent case on the Confrontation Clause, the Court appeared to discuss the three formulations as more than merely possible definitions. *See Melendez-Diaz v. Massachusetts,* 129 S.Ct. 2527, 2531 (2009))(stating that in listing the three formulations,

> *Crawford* "described the class of testimonial statements covered by the Confrontation Clause"); *id.* at 2532 (in holding that drug-analysis certificates are testimonial, noting that "[o]ur description of [the core class of testimonial statements] mentions affidavits twice").

The Sixth Circuit had adopted a standard for applying the Supreme Court's ruling in *Crawford*. In *United States v. Cromer,* 389 F.3d 662 (6th Cir. 2004), this court offered the following guidance for determining whether a statement in testimonial:

> > The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.

> *Id.* at 675; *see also United States v. Hinton,* 423F.3d 355, 359-60 (3rd Cir. 2005) (adopting the *Cromer* standard). Applying this standard, we held that a confidential informant's statements to a police officer, relating the name identification and physical description of the defendant, were testimonial. *Id.* at 677-79. This court has consistently applied the *Cromer* standard. *See, e.g., United States v. Mooneyham,* 473 F.3d 280, 286-87 (6th Cir. 2007) (co-conspirator's statements to undercover police officer were not testimonial because he would not have believed they would be used a trial); *United States v. Johnson,* 440 F.3d 832, 843 (6th Cir. 2006) (statement to twenty-five year acquaintance was not testimonial when declarant had no reason to suspect acquaintance's cooperation with law enforcement); *United States v. Barry-Scott,* 251 F. App'x. 983, 989-90 (6th Cir. 2007) (unpublished opinion) (confidential informant's statements to police officer were testimonial).

*Miller,* 608 F.3d at 923-24.

This Court concludes that Mr. Barton's confrontation claim fails because under *Crawford* and its progeny, the statements about which Mr. Barton complains do not raise Confrontation Clause issues because they were nontestimonial.

First, since Mr. Phelps was indisputably deceased at the time of Mr. Barton's trial, he was "unavailable" for purposes of the Sixth Amendment's Confrontation Clause. See *Roberts,*

448 U.S. at 74.

The undisputed testimony establishes that Mr. Phelps and Mr. Henson were half-brothers who grew up together.  Tr. at 565, PageID 1365.  Further, Mr. Phelps, who was two and one-half years younger than Mr. Henson, and Mr. Henson were very close.  Tr. at 566, PageID 1366.  Additionally, the testimony shows that Mr. Henson has a history of several criminal convictions.  Tr. at 567-68, PageID 1367-68. Further, the testimony establishes that Mr. Phelps and Mr. Henson engaged in criminal activities together including being hired by people to steal their cars or burglarize their homes so that those individuals could collect the insurance money.  Tr. at 568-70, PageID 1368-70.  The statements about which Mr. Henson initially testified, and about which Mr. Barton complains, were statements that involved Mr. Henson and Mr. Phelps planning the events at Mr. Barton's house which led to Mr. Barton's conviction.  See, *i.e.,* Tr. 571-79, PageID 1371-79.  The subsequent statements involved Mr. Phelps telling Mr. Henson about the April 11, 1995, events at Mr. Barton's house in which Mr. Phelps and another individual.  See, Tr. 585-89, PageID 1385-89.[4]

As the state court of appeals noted, Mr. Phelps' statements do not fall into any of the *Crawford* categories of "testimonial" statements.  Specifically, Mr. Phelps' statements were not: (1) *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, or prior testimony that Mr. Barton was unable to cross-examine, or similar pretrial statements that declarants would have reasonably expected to be used prosecutorially;  (2) extrajudicial statements contained in formalized testimonial materials such as affidavits, depositions, prior testimony, or confessions; or (3)  statements that were made under circumstances which would

[4]  Mr. Henson did not participate in the April 11, 1995, events because he had been arrested on March 24, 1995, and remained in the Middletown Jail until May 31, 1995.  Tr. at 580, PageID 1380.

lead an objective witness reasonably to believe that the statement would be available for use at a later trial. Mr. Phelps' statements about which Mr. Barton complains were not, in any way, formal statements made to government officials, made in the course of a police interrogation, at a preliminary hearing, during grand jury proceedings, or at a previous trial. Rather, Mr. Phelps made the statements to Mr. Henson who was his brother and with whom he had previously engaged in criminal activity. There is absolutely nothing that would indicate that Mr. Phelps made the statements with the intention of bearing testimony against Mr. Barton. Nor is there any indication that Mr. Phelps would have anticipated that the statements would be used against Mr. Barton in the prosecution of any crime. Additionally, there is nothing to indicate that Mr. Phelps had any reason to suspect that Mr. Henson, the individual to whom he made the various statements was, or would be, cooperating with law enforcement personnel in the investigation of any crimes. Rather, Mr. Phelps made the statements to someone whom he most likely trusted, with whom he had engaged in criminal activity in the past, and in whom he confided.

Because the statements about which Mr. Barton complains are not testimonial in nature, there are no Sixth Amendment confrontation rights implicated in their admission into evidence.

Mr. Barton's Ground Three is without merit and should be dismissed.


**<u>Conclusion</u>**


It is therefore recommended that Petitioner Thomas J. Barton's Petition for Writ of Habeas Corpus, (Doc. 1, PageID 1), be denied. Because reasonable jurists would not disagree with

this conclusion, Mr. Barton should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

November 14, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).