# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

THOMAS J. BARTON,  :

                Petitioner,

-vs-

PHILLIP KERN, WARDEN

                Respondent.  :

Case No. 1:09-cv-353

District Judge S. Arthur Spiegel
Magistrate Judge Michael R. Merz

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This case is before the Court on Petitioner's Objections (Doc. No. 45) to the Magistrate Judge's Report and Recommendations on the merits (Doc. No. 44). The Warden has responded to the Objections (Doc. No. 46) and Petitioner has submitted a Notice of Supplemental Authority (Doc. No. 48).[1] The General Order of Reference for the Dayton location of court permits a magistrate judge to reconsider decisions or reports and recommendations when objections are filed.

The Report and Recommendations recommend that the Petition be denied, specifically rejecting Mr. Barton's arguments that he is entitled to a relief on the bases of a *Brady* violation (Ground One), a denial of his right to effective assistance of trial counsel in two respects (Ground Two), and a denial of his right to confrontation (Ground Three).[2] Mr. Barton has raised Objections to the Report as to his *Brady* (Ground One) and ineffective assistance (Ground Two) claims, but

---

[1] Petitioner also filed a Reply to the Warden's Response which was stricken because Fed. R. Civ. P. 72 does not provide for such a filing and Petitioner had not sought leave to file (See Notation Order of December 19, 2011).

[2] Mr. Barton also raised a fourth ground based on a denial of due process but eventually withdrew that claim. See Doc. 19, PageID 2195.

not as to his Confrontation Clause claim. (Doc. 45).

**Ground One**

Petitioner's first Ground for Relief is pled in the Petition as follows:

> 10. The Due Process Clause of the Fourteenth Amendment was violated where the state withheld *Brady* impeachment evidence from Barton that undermined the credibility of the sole witness that inculpated him.

(Petition, Doc. No. 1, PageID 2.) Although the required form for habeas corpus petitions under 28 U.S.C. § 2254 calls for a statement of supporting facts on each claim, Petitioner's counsel did not include such a statement. The Respondent understood, however, that Petitioner was raising here the same claim he had made in post-conviction proceedings, to wit, "that the state withheld material, exculpatory evidence by failing to provide Barton with detailed investigatory records about an unrelated crime that had possibly been committed by the state's main witness, Gary Henson." (Return of Writ, Doc. No. 11, PageID 37). In his reply[3] Petitioner re-stated the claim as follows:

> The state suppressed Henson's statement to the Cold Case Squad investigators regarding his purported involvement in another staged burglary. Henson told the investigators that James Kelly also hired Henson to stage a burglary at Kelly's Warren County farmhouse. As with Barton's purported motive, Henson stated that Kelly wanted to scare his family into moving from the countryside.

(Doc. No. 19, PageID 2207.)

Barton's theory about why Henson's statement to the cold case squad is exculpatory is that the statement is untrue and so obviously untrue (Petitioner calls it "absurd") that the fact that Henson had made the statement would have undermined his credibility with the jury. Barton believes the

---

[3]Captioned "Memorandum in Opposition to the State's Motion to Dismiss and Barton's Cross-Motion for Summary Jugment."

story is untrue because Ann and Becky Kelly both say it was untrue because their father, James Kelly, told them it was untrue, an assertion they adopted in their Affidavits (Exhibits B and C to Post-Conviction Petition, Return of Writ, Exhibit 39, PageID 578-581.)

At the time of trial, Barton's defense counsel had been supplied with the written report of the Kelly burglary. What they did not have was Henson's statement to the cold case squad about the Kelly burglary. In itself, Henson's statement about the Kelly burglary is impeaching of Henson because it admits his involvement in a prior burglary, and moderately inculpatory of Barton because it shows Henson's involvement in a purportedly similar staged burglary. In fact, Henson testified consistently with the statement at trial (Trial Tr., Doc. No. 18, PageID 1380). If combined with James Kelly's contradiction of the statement, which is presumably what defense counsel would have learned if the results of the reinvestigation had been revealed, it becomes a different sort of impeachment: proof of prior falsehood rather than by admission of a prior crime. Kelly was alive to give testimony to that effect at the time of trial, but how would it have been admitted in evidence? Ohio R. Evid. 608(B) would appear to exclude such testimony as extrinsic evidence of prior misconduct of Henson for purposes of attacking his credibility[4].

Barton first presented his *Brady* claim in post-conviction. The trial court held that by not raising any Brady issues on direct appeal, Barton was barred by *res judicata* from raising them in post-conviction. (Decision and Entry Denying Defendant's Petition for Post-Conviction Relief, Ex. to Return of Writ, Doc. No. 11-2, PageID 666, citing *Strowmatt v. State*, 779 N.E. 2d 971, 2002 Ind. App. LEXIS 2072 (2002), and *State v. Reynolds*, 79 Ohio St. 3d 158 (1997).) But it also indicated

---

[4] In denying post-conviction relief, the trial court adverted to this difficulty in Petitioner's theory when it noted that the Kelly burglary was "a collateral matter" and "the Court has strong reservations as to what limited relevant evidence would have been admitted had the defense attempted to raise the matter at trial." (Decision and Entry, Doc. No. 11-2, PageID 666.)

lack of merit by noting that

> [T]he defense invites the Court to speculate that a different result might have occurred had this information been presented. Both burglaries are similar in the respect that Henson claimed he and his half-brother were hired to scare the owner's wife and daughter into moving from the home. Just because Mr. Kelley [sic] denies any part in such a plot, does not mean that the jury would not have believed him [Henson] or that the jury would not have found a ring of truth in the similarity between the two stories.

(Decision and Entry Denying Defendant's Petition for Post-Conviction Relief, Ex. to Return of Writ, Doc. No. 11-2, PageID 666.)

On appeal, the court of appeals affirmed on *res judicata* grounds and did not reach the merits. *State v. Barton*, Case No CA2006-10-127 ¶ 19 (Ohio App. 12th Dist. June 9, 2008)(Return of Writ, Doc. No. 11, Ex. 49, PageID 741), *citing State v. Perry*, 10 Ohio St. 2d 175 (1967).

In the Return of Writ in his defense of this Ground for Relief, Respondent relied entirely on Barton's procedural default in not raising the *Brady* claim on direct appeal. Because the Magistrate Judge concluded the claim was without merit, the Report and Recommendations pretermits any analysis of the *res judicata* defense. (Report and Recommendations, Doc. No. 44, PageID 2416.)

In his Response to the Objections, the Warden asserts "the Magistrate Judge ignored the obvious procedural default barring consideration of his Brady claim..." (Response, Doc. No. 46, PageID 2453). Thus the procedural default found by the state courts must be discussed here.

Although Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground, *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007), an incorrect application of a state *res judicata* rule does not constitute reliance on an adequate and independent state ground. *Wogenstahl v. Mitchell*, ___ F.3d ___, 2012

4

U.S. App. LEXIS 1905 *82 (February 2, 2012), *citing Durr,* 487 F.3d at 434-35, and *Richey v. Bradshaw*, 498 F.3d 344, 359 (6th Cir. 2007). The Magistrate Judge concludes *res judicata* was incorrectly applied here. *Perry* holds that a claim which can be raised on direct appeal but is not thus raised cannot later be raised in post-conviction. Conversely, Ohio Revised Code § 2953.21 is provided for consideration of matter *dehors* the record on direct appeal. It is difficult to see how this particular *Brady* claim could have been raised on direct appeal because Barton did not know about what he now claims is *Brady* material – James Kelly's denial of hiring Henson in 1993 – at the time of trial. The authority cited by the trial court is not to the contrary: *Strowmatt* is an Indiana appellate decision and *Reynolds* deals with *res judicata* in a completely different context. So far as the Magistrate Judge is aware, it is not Ohio law that a defendant must plead a *Brady* assignment of error in blank as it were, hoping that something will turn up that can be added to the record on direct appeal. Thus the Warden's procedural default defense to the first Ground for Relief is unavailing.

Barton's first objection to the recommendation on Ground One is that the Magistrate Judge improperly afforded AEDPA deference to the state courts' decision on this *Brady* claim because the state courts did not decide the claim on the merits. As noted above, Barton is correct as to the court of appeals decision. However, the Common Pleas Court also analyzed the merits of the claim and concluded that the James Kelly information was collateral and therefore of doubtful admissibility and its hypothetical admission did not change the likely outcome of the trial. (Decision and Entry Denying Defendant's Petition for Post-Conviction Relief, Ex. to Return of Writ, Doc. No. 11-2, PageID 666.) While the court did not give an extended analysis of the *Brady* issues, the analysis it did give is consistent with *Brady*. We are instructed by recent Supreme Court law to evaluate state court decisions on constitutional claims without requiring that the state courts give extended

5

opinions.  *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 792 (2011).  And because the Ohio court of appeals did not discuss the merits of the *Brady* claim, we look through its decision to that of the Common Pleas Court.  *Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

The *Brady* analysis in the Report and Recommendations deals with Barton's diligence in pursuing the Kelly information.  That analysis is *de novo* in that the Ohio courts did not deal with that question.  The *Brady* issues dealt with by the Common Pleas Court are whether the Kelly information would have been admissible and whether, if admitted, there is a reasonable probability it would have changed the outcome.  Barton has not demonstrated how either one of those conclusions is contrary to or an objectively unreasonable application of United States Supreme Court law.  As to the first of those issues, this Court has indicated above it shares the trial judge's doubt about the admissibility of James Kelly's testimony if it had been offered.

The second issue is one of materiality.   "Evidence is material [for *Brady* purposes] only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *United States v. Bagley*, 473 U.S. 667, 683 (1985).  "The proper *Brady* inquiry is whether the cumulative effect of the withheld evidence leads us to conclude that there is a reasonable probability that the result of the trial would have been different."  *Apanovitch v. Bobby*, 649 F.3d 468, 477 (6th Cir. 2011), *citing Doan v. Carter*, 548 F.3d 449, 460 (6th Cir. 2008).

Barton claims the undisclosed information would have impeached Henson.  But it would have been at best further gilding of the lilly.  Defense counsel impeached Henson by getting him to admit many prior convictions, including for falsification offenses.  He admitted fraudulently using

other names, including his deceased half-brother's. He admitted on the stand that he had lied to investigators about this very crime. And still the jury believed him. It is extremely doubtful that the Kelly information would have tipped the balance. The Magistrate Judge makes that conclusion de novo and also concludes that the Common Pleas decision to the same effect is neither contrary to nor any unreasonable application of *Brady* and its progeny.

Barton's second objection on the First Ground for Relief is that the Magistrate Judge did not apply the heightened scrutiny which a *Brady* claim is supposed to get "when the conviction was the result of testimony from a single witness." Objections, Doc. No. 45, PageID 2445, citing *Robinson v. Mills*, 592 F.3d 730, 736 (6th Cir. 2009). In *Robinson*, the Sixth Circuit noted that "[c]onsiderable authority from the Supreme Court and our court indicates that a defendant suffers prejudice from the withholding of favorable impeachment evidence when the prosecution's case hinges on the testimony of one witness." *Id. quoting Harris v. Lafler*, 553 F.3d 1028, 1034 (6th Cir. 2009). This is not, however, as the result of adopting a heightened scrutiny test for key witnesses, but rather incorporating the key witness fact into materiality analysis. The Robinson Court went on to note:

> [W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.

*Id., quoting* Byrd v. Collins, 209 F.3d 486, 518 (6th Cir. 2000) (quoting *United States v. Avellino*, 136 F.3d 249, 257 (2d Cir. 1998)). As noted above, Barton had a great deal of impeachment material on Henson, brought out at length by Mr. Rion on cross. Thus while the Kelly information, if admissible, would have further impeached a key witness, it would have been at most cumulative.

Barton's third, fourth, and fifth objections on the First Ground for Relief all relate to what

7

he refers to as the "reasonable diligence defense."  He asserts it was error to "ignore *Banks v. Dretke*, 540 U.S. 668, 157 L. Ed. 2d 1166 (2004)," "error to fail to identify or examine any cases to support the holding that Burton failed to exercise reasonable diligence to uncover the impeachment evidence," and "error for the magistrate-judge to raise the reasonable diligence defense *sua sponte*." (Objections, Doc. No. 45, PageID 2445-2447.)

For his asserted *sua sponte* error, Barton relies on *Baze v. Parker,* 371 F.3d 310 (6th Cir. 2004).  There the Court held the state in a habeas corpus may waive a defense by not asserting it. *Id.* at 320, citing *Scott v. Collins*, 286 F.3d 923, 927-28 (6th Cir. 2002). Insofar as *Scott* holds it is error to raise a defense *sua sponte*, it is overruled by *Day v. McDonough*, 547 U.S. 198 (2006)(upholding *sua sponte* raising of defense even after answer which did not raise it).

In *Banks v. Dretke, supra,* the state did not reveal that a key witness was a paid informant and did not correct his false testimony that he had not spoken with the police until shortly before trial.  The Court found that the petitioner's failure to investigate resulted from the prosecution's persistent misrepresentations about the witness' status as a paid informant, representations on which the petitioner was entitled to rely.

In applying *Banks* to this case, Barton admits the police report on the Kelly burglary was furnished, but says it was not in itself *Brady* evidence.  Instead, Barton argues

> The actual *Brady* evidence was: (i) Henson's *undisclosed* statement that he was hired by James Kelly to stage the burglary to scare Kelly's family into moving from his rural home; (ii) James Kelly's *undisclosed* statement refuting his involvement with Henson in staging a burglary to scare his family; and (iii) the *undisclosed* evidence that the investigators threatened to prosecute James Kelly for obstructing justice unless he corroborated Henson's statement and testified against Barton at trial.

8

(Objections, Doc. No. 45, PageID 2446.) Henson's statement about the Kelly burglary was disclosed at trial. The only evidence we have of what James Kelly's statements would have been are hearsay from his widow and daughter. As noted above, they would have been of doubtful admissibility and even if admitted would have changed Henson's statement from an admission of an impeaching prior crime to an accusation of an impeaching prior false statement. Moreover, Barton points to no place where the State misrepresented anything, unlike the situation in *Banks*.

In *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007), the court held that where "the factual basis for a claim is 'reasonably available to' the petitioner or his counsel from another source, the government is under no duty to supply that information to the defense." In *Coe v. Bell,* 161 F.3d 320, 344 (6th Cir. 1998), the court held there is no *Brady* violation where information is available to the defense "because in such cases there is really nothing for the government to disclose." Finally, in *Bell v. Bell*, 512 F.3d 223(6th Cir. 2008)(en banc), *Matthews* was applied even when the prosecutor denied the existence of some of the material.

Mr. Barton filed a notice of supplemental authority, directing the Court's attention to *Smith v. Cain,* 565 U.S. ___, 132 S. Ct. 627 (2012). Mr. Barton's position seems to be that *Cain* is applicable because, similar to his case, it involves impeachment evidence relating to the state's sole witness.

In *Cain*, the petitioner had been convicted of first-degree murder based on the testimony of a single eyewitness. *Id.* at *3. The Supreme Court determined that the state had violated *Brady* by failing to disclose to the defense the witness' statements to the investigating officers that contradicted his trial testimony. In contrast to *Cain,* there is nothing in Mr. Barton's case that

9

establishes that any trial witness gave statements to the investigating officers that contradicted the witness' trial testimony and that the state withheld the contradictory statements. *Cain* does not support Mr. Barton's position that this Court erred by rejecting his *Brady* claim.

In this case, the impeaching character of James Kelly's statements is far from evident. Even if they had been disclosed and admitted, they would not have been material on the issue of Henson's credibility because so much other far more damaging material was available and used. Therefore, whether viewed de novo or with AEDPA deference, the First Ground for Relief is without merit and should be dismissed. However, having spent several days considering Petitioner's arguments on the point, the Magistrate Judge is persuaded he was in error in recommending denial of a certificate of appealability on this Ground for Relief. The prior recommendation to that effect is WITHDRAWN and a certificate is now recommended.

**Ground Two**

Barton's Second Ground for Relief is pled as follows:

> 11. Barton was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments:
> i) because his trial attorney failed to challenge the reliability or cross-examine the state's primary witness regarding testimony that was refreshed or influenced by pretrial hypnosis; and
> ii) because his trial attorney failed to renew an objection at trial to the testimony of the state's primary witness regarding his dead brother's hearsay account of Barton's involvement in the crime.

(Petition, Doc. No. 1, PageID 2-3.)

In the Report and Recommendations, the Magistrate Judge recommended dismissing the first sub-claim on the ground that Barton had shown no prejudice from the failure to request a pretrial hearing on whether Henson's testimony had influenced by pretrial hypnosis (Report, Doc. No. 44, PageID 2422-2423). As noted in the Report, the court of appeals reached the same conclusion. *Id.* at PageID 2419-2421. Because the court of appeals decided this issue on the merits, Barton was not entitled to an evidentiary hearing on this issue. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400-01, 179 L. Ed. 2d 557 (2011). And because that decision was not an objectively unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), it is entitled to deference under the AEDPA.

The fact that Barton submitted an affidavit in post-conviction from a psychologist with the opinion that Henson's hypnosis was unreliable does not change the outcome. The holding in *Pinholster* is not dependent upon there having been an evidentiary hearing on a particular issue in the state courts.

Barton's claim that "At no point did the Ohio Court of Appeals ever apply *Strickland's* two-prongs [sic] to Barton's hypnosis ineffective-assistance claim" is belied by the quotation from the court of appeals opinion on that point at PageID 2450.

Barton makes no objection to the recommendation that the second ineffective assistance of trial counsel sub-claim should be dismissed as procedurally defaulted.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that Petition be dismissed with prejudice. It is also recommended that Petitioner be granted a certificate of appealability on

his First Ground for Relief, but denied a certificate of appealability on Grounds Two and Three.

February 7, 2012.

s/ **Michael R. Merz**<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).