```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                          WESTERN DIVISION
```

|  |  |  |
|---|---|---|
| THOMAS J. BARTON, | : | NO. 1:09-CV-00353 |
| Petitioner, | : |  |
| vs. | : |  |
|  | : | **OPINION AND ORDER** |
| PHILLIP KERN, Warden, Southern Ohio Correctional Institution, | : |  |
| Respondent. | : |  |

This matter is before the Court on the Magistrate Judge's Report and Recommendations (doc. 44), Petitioner's Objection (doc. 45), Respondent's Response (doc. 46), The Magistrate Judge's Supplemental Report and Recommendation (doc. 49), Petitioner's Objection (doc. 50), and Petitioner's Notice of Supplemental Authority (doc. 51). For the reasons indicated herein, the Court ADOPTS and AFFIRMS the Magistrate Judge's Report and Recommendation and DENIES Petitioner's Petition for Writ of Habeas Corpus (doc. 1).

**I.   Background**

This case involves a long procedural history, as it all began in 1995 with the killing of Petitioner's wife, Vickie Barton ("Vicki") during a burglary at her home. The Magistrate Judge spelled out the detailed history of this case in his Report and Recommendation (doc. 44), which the Court incorporates by

reference. Essentially the case of Vickie's murder went cold as detectives cleared Petitioner as a suspect after it was learned that he was at another location at the time of her death. In 1998, however, a career criminal named Gary Henson was arrested in an unrelated burglary, and Henson told the detective that his half-brother William Phelps had been involved romantically with Vickie Barton, and went to her house the day she was killed to steal things from her residence. According to Detective Hensley, who interviewed Henson, Henson said Phelps panicked when he found Vickie was at the house, and he shot her. Henson further stated he believed that Phelps' subsequent suicide, four months after the incident, was the result of his having killed Vickie.

Armed with such information, the Warren County Sheriff's Office exhumed Phelps' body to compare his DNA with DNA found at the crime scene. There was no match and the crime remained unsolved.

In April 2003, a "cold case squad" re-examined the case and discovered that in Petitioner's 911 call the day of the killing, he referenced needing to call "Phelp man." As such, the detectives linked Petitioner to Gary Henson, whose name was in Phelps' file.

Detectives interviewed Henson again in August 2003, at which time he provided information implicating Petitioner in his wife's killing. Henson later testified at Petitioner's trial,

2

stating Petitioner paid Phelps $3,000 to go to his and his wife's residence to scare her.  Henson said that initially Petitioner had sought Henson's help with such endeavor, but that as Henson was in jail at the time, he could not help stage the burglary.

Henson further testified that when Phelps and an unidentified accomplice went to the house to scare Vicki, she surprised them, his accomplice "panicked," and then shot and killed her.  Phelps also told Henson that the accomplice sexually assaulted Vicki.

Under cross examination, Henson denied originally telling detectives that Phelps had shot and killed Vicki, and testified that the "he" to whom he was referring who shot Vicki was rather the unidentified accomplice.  The defense called Detective Hensley, who had interviewed Henson in 1998, who testified that in Hensen's interview at such time, Henson referred to Phelps as the shooter instead of the accomplice.

The jury found Petitioner guilty as charged after trial in February 2005.  The trial court ultimately merged Counts II and III of the Indictment and sentenced Petitioner to not less than five nor more than twenty-five years on Count I of the Indictment (for involuntary manslaughter), and to not less than ten nor more than twenty-five years on Count II of the Indictment (aggravated burglary), both sentences to be served concurrently.

Petitioner subsequently appealed his sentence, which was

3

denied on the appellate level, and which the Ohio Supreme Court dismissed as not involving any substantial question. Petitioner also filed a petition for post-conviction relief pursuant to O.R.C. § 2953.21, which was denied on the trial court level. The appellate court affirmed the denial, and the Ohio Supreme Court ultimately dismissed the appeal as again, not involving any substantial question.

Petitioner next filed the instant Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, which now involves three grounds for relief. In Ground One, Petitioner contends the Due Process Clause of the Fourteenth Amendment was violated where the state withheld <u>Brady</u> impeachment evidence from Petitioner that undermined the credibility of the sole witness that inculpated him. In Ground Two, Petitioner contends he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments because 1) his trial attorney failed to challenge the reliability or cross-examine the state's primary witness regarding testimony that was refreshed or influenced by pretrial hypnosis; and 2) because his trial attorney failed to renew an objection at trial to the testimony of the state's primary witness regarding his dead brother's hearsay account of Barton's involvement in the crime. In Ground Three, Petitioner contends he was denied his right to confrontation under the Sixth and Fourteenth Amendments where the trial court admitted hearsay from the primary witness's dead brother that was the only

4

evidence of Barton's guilt.

Respondent argues that Petitioner's <u>Brady</u> claim is procedurally defaulted, and that in any event, it is without merit (doc. 11). Respondent contends the first subsection of Petitioner's ineffective assistance claim is without merit, because his counsel's decision not to make an issue of Henson's hypnosis did not prejudice Petitioner within the meaning of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) (<u>Id</u>.). Respondent contends the second section of Petitioner's ineffective assistance of counsel claim has been procedurally defaulted as he never presented such claim to the state court of appeals (<u>Id</u>.). As for Petitioner's Confrontation Clause claim, Respondent similarly contends Petitioner has procedurally defaulted (<u>Id</u>.).

## II. The Magistrate Judge's Report and Recommendation

The Magistrate Judge prepared a comprehensive Report and Recommendation reviewing each of Petitioner's grounds for relief, and finding them either procedurally barred, without merit, or both (doc. 44). As for Petitioner's first ground of relief, the Magistrate Judge found no <u>Brady</u> violation because Petitioner could have discovered the evidence involving a 1993 burglary that Petitioner believed he could have used to impeach Mr. Henson (<u>Id</u>.).

As for his first subclaim of Ground Two regarding the failure of his counsel to cross-examine the state's primary witness, Henson, about the fact that his testimony was refreshed or

5

influenced by pretrial hypnosis, the Magistrate Judge found no evidence in the record showing that Henson's memory and testimony were altered, supplemented, or affected by the hypnosis (Id.). As such the Magistrate Judge concluded that even had Petitioner's counsel pursued the issue at trial, it would have been discovered that the hypnosis had no effect on Henson's trial testimony, and therefore Petitioner was not prejudiced by his counsel's failure to pursue such issue (Id.).

As for his second subclaim, that his counsel was ineffective for failing to renew an objection at trial to Hensen's testimony regarding Phelps' hearsay account of Petitioner's involvement in the crime, the Magistrate Judge found Petitioner never brought such claim on direct appeal (Id.). Accordingly, the Magistrate Judge found Petitioner had procedurally defaulted such claim (Id. citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)). The Magistrate Judge further noted that Petitioner has not raised any claim of ineffective assistance of appellate counsel that would arguably serve as cause for the default (Id.).

As for this Third Ground for relief, that the trial court violated his confrontation clause rights when it admitted into evidence hearsay testimony from the deceased witness, the Magistrate Judge agreed with Respondent that such claim is procedurally defaulted (Id.). The Magistrate Judge found Petitioner failed to comply with the contemporaneous objection rule

6

to hearsay testimony at trial, that the state courts enforced such rule, and that such rule is an adequate and independent state ground (Id.). The Magistrate Judge further noted that because Petitioner defaulted on his ineffective assistance of trial counsel claim, Petitioner cannot establish cause for the default of the instant claim (Id.). Consequently, the Magistrate Judge reasoned, the claim is procedurally defaulted (Id.).

The Magistrate Judge further found that even if Petitioner's Confrontation Clause is not procedurally barred, in any event, it is meritless (Id.). The Magistrate Judge reasoned that Phelps' statements were nontestimonial because of the nature of the relationship between Phelps and his half-brother Henson and there was nothing to indicate Phelps made such statements with the intention of bearing testimony against Petitioner (Id.). The Magistrate Judge further agreed with the state court of appeals that Phelps' statements do not fall into any of the categories of "testimonial" statments under Crawford v. Washington, 541 U.S. 36 (1994). Specifically, the Magistrate Judge noted the statements were not 1) ex parte in-court testimony or its functional equivalent, that is, affidavits, custodial examinations, or prior testimony that Petitioner was unable to examine, or similar pretrial statements that declarants would have reasonably expected to be used prosecutorially; 2) extrajudicial statements contained in formalized testimonial materials such as affidavits,

7

depositions, prior testimony, or confessions; or 3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial (Id.). Instead, the Magistrate Judge reasoned, Phelps made the statements to his brother, with whom he had previously engaged in criminal behavior, and in whom he confided. As such, the Magistrate Judge concluded there were no Sixth Amendment confrontation rights implicated in the admission of such statements into evidence, and Petitioner's Ground Three is meritless.

The Magistrate Judge therefore recommended that Petitioner's Petition for Writ of Habeas Corpus be denied. Because reasonable jurist would not disagree with such conclusion, the Magistrate Judge further recommended that Petitioner be denied leave to appeal in forma pauperis and any requested certificate of appealability.

**III. The Parties' Responses and the Supplemental Report**

Petitioner argues the Magistrate Judge erred in evaluating his Brady claim and his ineffective assistance of counsel claims (doc. 45). However, Petitioner raised no objection to the Magistrate Judge's Report as to his Confrontation Clause claim (Id.). Respondent contends in its Response that Petitioner merely rehashes his previous arguments and fails to set forth any mistakes of law or fact in the Report and Recommendation (doc. 46).

The Magistrate Judge gave a second look at this matter as a result of Petitioner's Objection, and ultimately concluded that although the Petition should be dismissed with prejudice, a certificate of appealability on the first ground for relief should be granted, after all (Id.).

**IV.  Discussion and Conclusion**

Having reviewed this matter de novo pursuant to 28 U.S.C. § 636, the Court finds the Magistrate Judge's Report and Recommendation (doc. 44) and his Supplemental Report (doc. 49) thorough, well-reasoned, and correct.  The Court further finds Petitioner's objections without merit, and agrees with the Respondent that he essentially rehashes arguments the Magistrate Judge adequately addressed.  The Court also finds that as reasonable jurists might disagree as to the Magistrate Judge's conclusion as to Ground One, the Brady claim, a certificate of appealablity should issue, consistent with the Magistrate Judge's Supplemental Report.

Accordingly, the Court ADOPTS and AFFIRMS the Magistrate Judge's Report and Recommendation (docs. 44, 49), and DENIES WITH PREJUDICE Petitioner's Petition for Writ of Habeas Corpus (doc. 1). The Court ISSUES a certificate of appealability with respect to the claim in Ground One of the petition because a jurist of reason could find it debatable whether this Court is correct in its ruling.  Slack v. McDaniel, 529 U.S. 473, 484-85, (2000).  However

9

the Court DECLINES to issue a certificate of appealability with respect to Grounds Two and Three. Finally, pursuant to 28 U.S.C. §1915(a)(3), this Court CERTIFIES that any appeal of this order as to Ground One should be taken in good faith, and any application to appeal in forma pauperis should be GRANTED.

SO ORDERED.

Dated: August 2, 2012          s/S. Arthur Spiegel

                                                   S. Arthur Spiegel
                                                   United States Senior District Judge